JUDGE SCHEINDLIN

07 CV 6571

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHICAGO VENTURE PARTNERS, L.P., an Illinois Limited Partnership, </br></br> Plaintiff, </br></br> v. </br></br> BRILLIANT TECHNOLOGIES CORPORATION, a Delaware corporation, </br></br> Defendant. | ECF CASE </br></br> 07 Civ. _____ |

Filed stamp: JUL 20 2007 U.S.D.C. S.D.N.Y. CASHIERS

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, CHICAGO VENTURE PARTNERS, L.P., by and through its attorneys, Doar Rieck Kaley & Mack, files this Complaint for Injunctive and Other Relief against Defendant, BRILLIANT TECHNOLOGIES CORPORATION, and alleges:

### PARTIES

1.  Chicago Venture Partners, L.P. ("CVP") is an Illinois limited partnership. CVP is a shareholder of BTC and a "holder" of a BTC Debenture (the "Debenture") described below.

2.  Brilliant Technologies Corporation ("BTC"), formerly known as Advanced Technology Industries, Inc. ("ATI"), is a Delaware corporation with its principal place of business in New York, New York.

### JURISDICTION AND VENUE

3.  This court has jurisdiction over the claims pursuant to 28 U.S.C. §1332(a)(1). The partners of CVP are citizens of, and domiciled in, either the State of Illinois or the State of Utah. BTC is a corporation incorporated under the laws of the State of Delaware having its principal place of business in New York, New York. The

matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.

4. Venue is proper pursuant to 28 U.S.C. §1391(a) because BTC's principal place of business is in this district. In addition, pursuant to Section 10 of the Debenture, Section 11(d) of the Registration Rights Agreement, and Section 11 of the Securities Purchase Agreement (the "Security Agreement"), which are the subject of the Second Claim for Relief, BTC consented to the jurisdiction of this Court and waived any objection to venue. (Debenture, §10; Registration Rights Agreement, §11(d); Security Agreement, §11). Collectively, the Debenture, Registration Rights Agreement and Security Agreement shall be referred to as the "Transaction Agreements."

5. With respect to the Transaction Agreements, BTC also expressly waived a right to trial by jury. (Debenture, §11; Registration Rights Agreement, §11(e); Security Agreement, §10).

## FIRST CLAIM FOR RELIEF
### (INJUNCTIVE RELIEF FOR VIOLATION OF DELAWARE CORPORATION LAW)

6. During 2007, CVP has been a substantial shareholder of BTC, having held and sold over 2.5 million shares of BTC. CVP is a current shareholder of BTC, having acquired 1,000 shares on or around July 10, 2007, and continues to hold those BTC shares. In addition, pursuant to the terms of the Debenture, CVP should be the registered holder of millions of additional shares of BTC, but has not yet received the shares due to BTC's failure to have an effective Registration Statement on file with the Securities and Exchange Commission ("SEC"), as required under the Registration Rights Agreement.

7.      As described in the Form 10-QSB filed by BTC with the SEC on March 31, 2007, BTC's "principal business activity consists of the development of . . . Qtrax. Qtrax is a music file sharing technology-based internet service, which when available will provide consumers the ability at no charge to download music files." (Form 10-QSB at F-8).

8.      In addition, as BTC stated in the Form 10-KSB for the year ended December 31, 2006, "[t]he Company's principal business activity consists of the development of a technology referred to as Qtrax." (*Id.* at F-16).

9.      In the Company's 10-KSB for the year ended December 31, 2006, BTC's Consolidated Balance Sheet has a line item under Assets for Deferred Licenses and Other Fees totaling $1,326,500. (Form 10-KSB at F-2). Significantly, footnote 3 to the Consolidated Financial Statements reflects that all or substantially all of these Deferred License Fees emanate from the Qtrax technology. (*Id.* at F-26 & F-27). The other assets on the Balance Sheet are non-revenue producing assets, such as property and equipment ($59,420), and sunk costs, such as capitalized software ($851,728). (*Id.* at F-2). The Balance Sheet also shows a cash balance of $86,927. (*Id.*). In short, the balance sheet reveals that the Qtrax technology is the only economically viable and productive asset generating revenue for BTC.

10.     In the Company's Form 10-QSB for the period ending March 31, 2007, the Balance Sheet lists total assets of $2,612,958. (Form 10-QSB at F-1). Of this number, $339,947 is cash, and the only other productive assets to generate revenue are the Deferred Licenses emanating from the Qtrax technology ($1,068,470). (*Id.*). Footnote 3 to the Consolidated Financial Statements makes clear that the revenues from the Deferred

Licenses are a result of agreements entered into with such music industry giants as EMI Music Publishing, Sony/ATV Music, TVT Music Inc., Warner Music Inc., and Universal Music Publishing Group. (*Id.* at F-18 & F-19).

11. On June 19, 2007, BTC entered into a non-binding letter of intent with The Flooring Zone, Inc. Pursuant to the letter of intent, BTC agreed to "transfer *all* of the outstanding shares of its wholly owned subsidiary, LTDnetwork, Inc. ("LTD"), which owns and operates the Qtrax technology and business, [to The Flooring Zone] in exchange for newly issued Flooring Zone common stock, representing 80% of the then outstanding common stock of Flooring Zone." (See Form 8-K, June 22, 2007) (emphasis added). BTC and Flooring Zone agreed to "use their reasonable best efforts to execute a definitive agreement within 45 days [i.e., by August 3, 2007] of the non-binding letter of intent." (*Id.*).

12. BTC's transfer of all of the LTD shares would constitute a transfer of substantially all of BTC's assets.

13. BTC's transfer of substantially all of its assets requires shareholder approval. Specifically, Section 271 of Title 8 of Delaware's General Corporation Law provides that:

> Every corporation may at any meeting of its board of directors or governing body sell, lease or exchange all or substantially all of its property and assets . . . upon such terms and conditions and for such consideration . . . including shares of stock in, and or securities of, any other corporation or corporations, as its board of directors or governing body deems expedient, **when as authorized by a resolution adopted by the holders of a majority of the outstanding stock of the corporation entitled to vote thereon[.]** (emphasis supplied).

4

14. BTC has not sought, and on information and belief, does not intend to seek, shareholder approval of this transfer of substantially all of its assets.

15. CVP has made written demand that BTC obtain shareholder approval of the contemplated transfer, but BTC has not agreed to hold the required shareholder's meeting. Despite the letter of intent's statement that BTC and The Flooring Zone would use their best efforts to execute a definitive agreement by August 3, 2007, no notice of a shareholders meeting has been received by CVP.

16. BTC's transfer of substantially all of its assets without shareholder approval is in direct contravention of Delaware General Corporation Law §271.

17. CVP is entitled to the issuance of an injunction to maintain the *status quo* pending adjudication of the merits of the controversy.

18. CVP is likely to succeed on the merits of that claim because, under Delaware corporate law, BTC is under an express duty to obtain shareholder approval before transferring substantially all of its assets.

19. Unless BTC is preliminarily enjoined from the foregoing conduct, CVP and other shareholders of BTC will be irreparably harmed because, among other things, once BTC's primary asset has been transferred to another corporation, the BTC shareholders will be unable to obtain the return of that asset.

20. A balancing of the equities favors the issuance of an injunction in favor of CVP. The injunctive relief that CVP requests would do no more than require BTC to refrain from transferring substantially all of its assets – the Qtrax technology - until the matter has been properly submitted to the shareholders for a vote and approved by a majority of the shareholders in accordance with Delaware law.

21. It is unjust and inequitable to permit BTC to act with deliberate disregard of its legal obligations, imposed by Section 271 of Delaware's General Corporation Law, to its shareholders.

22. CVP will suffer irreparable injury and harm that are incalculable if BTC is permitted to proceed with the transfer of substantially all of its assets without obtaining the approval of its shareholders.

## SECOND CLAIM FOR RELIEF
### (BREACH OF TRANSACTION AGREEMENTS)

23. On March 24, 2006, ATI, now doing business as BTC, through its President, Allan Klepfisz, entered into a 9% Convertible Debenture with CVP (the "Debenture"). The Debenture was issued pursuant to the terms of the Security Agreement entered into between ATI and CVP on July 19, 2005, the terms of which are incorporated into the Debenture. (Debenture, §15). In an effort to induce CVP to enter into the Debenture, CVP and ATI also entered into a Registration Rights Agreement on March 23, 2006.

24. CVP is the "Holder" of the Debenture.

25. Pursuant to the Debenture, BTC agreed to pay CVP the sum of Three Hundred Fifty Thousand Dollars ($350,000), plus interest accruing thereon, on or before March 23, 2007.

26. BTC failed to pay the principal and interest due pursuant to the Debenture on the due date of March 23, 2007. BTC's failure to pay the principal and interest on the Debenture constitutes an "Event of Default" under the Debenture. (Debenture, §12(a) ("[D]efault in the payment of principal or interest on this Debenture or any Redemption Amount due hereunder or any other amount due under a Transaction Agreement and, in

any such instance, the same shall continue for a period of five (5) business days . . . . shall constitute an 'Event of Default.'")).

27.In the event of a default by BTC, CVP may consider the Debenture "immediately due and payable . . . without presentment, demand . . . or notice[,] and [CVP] may immediately enforce any and all of [its] rights and remedies . . . ." (Debenture, §12).

28.Commencing on April 12, 2007 and again on June 12, 2007, CVP sold some Conversion Shares it received from BTC as part of this transaction. The proceeds from the sale of the Conversion Shares were Fifty One Thousand and Two Hundred and Fifty Dollars ($51,250). Thus, the remaining principal amount due under the Debenture is Two Hundred Ninety Eight Thousand Seven Hundred Fifty Dollars ($298,750).

29.At the time of the filing of this Complaint, the accrued and unpaid interest on the Debenture is approximately Forty Thousand Two Hundred Twenty Nine Dollars and Seven Cents ($40,229.07).

30.The Registration Rights Agreement requires that BTC file a Registration Statement with the Securities and Exchange Commission by May 15, 2006. (Registration Rights Agreement, §2(a)(i)).

31.BTC failed to file the Registration Statement.

32.The Registration Rights Agreement provides for an agreed-upon formula for determining the penalty to be paid by BTC for failure to file the Registration Statement. (Registration Rights Agreement, §2(b)). Under this formula, the penalty owed by BTC for such failure is Eighty Eight Thousand Nine Hundred Forty Seven Dollars and Ninety Four Cents ($88,947.94).

33. The Registration Rights Agreement also requires that BTC use its reasonable best efforts to have the Registration Statement declared effective by the SEC. (Registration Rights Agreement, §2(a)(i)).

34. BTC failed to have the Registration Statement declared effective.

35. The Registration Rights Agreement provides an agreed-upon formula for determining the penalty to be paid by BTC for failure to have the Registration Statement declared effective. (Registration Rights Agreement, §2(b)). Under this formula, the penalty owed by BTC for such failure is Seventy Three Thousand Four Hundred Thirteen Dollars and Sixty Nine Cents ($73,413.69).

36. Thus, the total amount currently due from BTC for its breaches of the Transaction Agreements is Five Hundred One Thousand Three Hundred Forty Dollars and Seventy Cents ($501,340.70), including interest.

37. On or about July 9, 2007, CVP sent a demand letter to BTC for the remaining balance due. To date, BTC has failed to pay the balance due.

38. CVP has performed all of its obligations pursuant to the Transaction Agreements.

**WHEREFORE,** Plaintiff, CVP, prays this court for an order:

    A. On the First Claim for relief:

        (i) Entering a Temporary Restraining Order and/or a Preliminary Injunction Order immediately restraining and enjoining defendant, BRILLIANT TECHNOLOGY CORPORATION, including but not limited to any officer, employee, agent or other representative of

BTC, from directly or indirectly transferring the Qtrax technology, without first obtaining shareholder approval at a properly called shareholder's meeting;

(ii) Awarding CVP all costs and expenses incurred in connection with this action, including its reasonable attorneys' fees; and

(iii) Granting CVP such other and further relief as the Court deems to be just and equitable.

B. On the Second Claim for Relief granting judgment against defendant, BRILLIANT TECHNOLOGY CORPORATION, in the amount of Four Hundred Sixty One Thousand One Hundred Eleven Dollars and Sixty Three Cents ($461,111.63), plus interest, and such other relief as this Court deems just and proper.

Dated: New York, New York
July 20, 2007

DOAR RIECK KALEY & MACK
Attorneys for Plaintiff

By: _____
EDWARD SCARVALONE (ES-4880)
JOHN F. KALEY
217 Broadway, Suite 707
New York, New York 10007
Tel:  (212) 619-3730
Fax:  (212) 962-5037

502348v1